**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| JEFFREY FRANKEL,<br><br>Plaintiff,<br><br>v.<br><br>THE TJX COMPANIES, INC. d/b/a TJ Maxx<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 3:16-cv-00227 (VLB)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant The TJX Companies, Inc. d/b/a T.J. Maxx ("T.J. Maxx" or the "Company") respectfully requests that this Court grant its motion seeking summary judgment on all counts in Plaintiff Jeffrey Frankel's Amended Complaint (Dkt. 14) because there are no disputed issues of material fact, and Defendant is entitled to judgment as a matter of law.

Plaintiff, a former Assistant Store Manager at T.J. Maxx's Norwalk, Connecticut retail store, asserts claims of age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA") and the Connecticut Fair Employment Practices Act ("CFEPA"). Plaintiff's claims fail because, based on the record evidence, no reasonable jury could find that Plaintiff's age or any protected activity caused the Company to terminate his employment. The undisputed record evidence clearly establishes that the Company terminated Plaintiff's employment because he violated the Company's long-standing security policy and then lied about it to management, after receiving repeated discipline for other performance issues. Indeed, the record reflects that no employee whom Plaintiff claims discriminated or retaliated against

him even participated in the termination decision. In addition, Plaintiff has adduced no evidence that the Company treated any similarly situated employees more favorably than him.

Plaintiff's retaliation claims also fail for an independent reason: he admitted during his deposition that he did not engage in any protected activity before his termination. It was not until after his termination that Plaintiff first complained that he suspected his direct supervisor, Glen Schwarz, terminated him because of his age. As such, his concerns were not only misguided because Mr. Schwarz did not participate in the termination decision, these complaints occurred after the adverse employment action, and cannot give rise to a retaliation claim. Because Plaintiff cannot establish this threshold element of his *prima facie* retaliation claim, the Court need not reach the question of causation.

Accordingly, Plaintiff's age discrimination and retaliation claims fail, and the Court should grant the Company's motion for summary judgment in its entirety.

## SUMMARY OF RELEVANT FACTS

As set forth more fully in the accompanying Statement of Material Facts ("SF"), T.J. Maxx hired Plaintiff as an Assistant Store Manager ("ASM") when he was nearly 50 years old. SF ¶3. During his 14-year tenure with the Company, Plaintiff was an average Associate.[1] SF ¶2-3, 15-22, 26-29. The various managers who prepared his performance reviews generally gave him overall "meets expectations" ratings. SF ¶16. At times, however, Plaintiff received criticism and warnings about his merchandising ability, management style, failure to develop the employees whom he supervised, and his teamwork. SF ¶16-17. He received this criticism from managers and concedes that it was not the result of discrimination. SF ¶18, 69, 71.

In February 2012, Glen Schwarz (age 46) became the Store Manager ("SM") at the T.J. Maxx store in Norwalk, Connecticut, where Plaintiff worked. SF ¶19. Similar to his

---

[1] "Associate" is the term that the Company uses instead of "employee." SF ¶6.

predecessors, Mr. Schwarz gave Plaintiff a "meets expectations" performance rating for 2012. SF ¶16, 27.  Also like his predecessors, Mr. Schwarz observed that Plaintiff needed to improve his merchandising presentation and use of signage.  SF ¶16-17, 20, 27, 29.  During their first year working together, Mr. Schwarz counseled Plaintiff formally on just two occasions.  SF ¶20-21.  Mr. Schwartz counseled Plaintiff for not properly maintaining the merchandise presentation and signage in his department--much like the criticism he received from a prior manager.  SF ¶20.  Mr. Schwartz also counseled Plaintiff after Loss Prevention personnel complained that Plaintiff had not followed protocol when he failed to provide a witness after the store apprehended a suspected shoplifter.  SF ¶21.  In general, though, Mr. Schwarz's evaluations reflected that Plaintiff's performance was adequate.  SF ¶27, 29.  Moreover, under the Company's Corrective Action Policy, the 2012 counseling notices became invalid after one year.  SF ¶22.

Between 2012 and 2013, Mr. Schwarz moved the four ASMs in the Norwalk store among the different areas of the store to determine which best complimented each ASM's strengths.  SF ¶23-25.  These transfers did not impact any ASM's compensation, benefits, or ability to advance within the Company; they had no impact on the ASMs' general responsibilities or authority; and the Company does not value any one role more than another.  SF ¶25.

During 2013, Plaintiff received three written warnings.  SF ¶26-36.  In each case, the warning mirrored criticism that Plaintiff received in the past.  SF ¶16-17, 28, 30, 34.  The new District Manager responsible for the Norwalk store, Ruthanne Sapienza (age 54), made the decision to issue all of these written warnings.  SF ¶26-35.  First, in June of 2013, Plaintiff received a written warning after both a customer and Plaintiff's subordinate complained to Ms. Sapienza regarding his conduct during an altercation at the store.   SF ¶28.  Ms. Sapienza

concluded that Plaintiff failed to intervene during a dispute, which caused the disagreement to escalate. SF ¶28. Later, in November of 2013, Ms. Sapienza issued Plaintiff a written warning when he failed to set clear expectations for his team, noting that he did not plan, prioritize, or delegate effectively. SF ¶30. Ms. Sapienza partnered with Human Resources Manager, Lelia ("Lollie") Ricard, before issuing the warning. SF ¶31. Finally, in December of 2013, Plaintiff violated store closing procedures for the second time in one month by leaving cash unsecured in one of the registers overnight, vulnerable to theft. SF ¶34. After partnering with Ms. Ricard again, and confirming that Plaintiff was the closing manager on duty when the cash handling violations occurred, Ms. Sapienza issued yet another warning to Plaintiff. SF ¶34. Although the Company's Corrective Action Policy allows the Company to terminate employees if they receive three written warnings in one year, Ms. Sapienza did not terminate Plaintiff's employment even after this third violation, providing him with an additional opportunity to improve his performance. SF ¶35.

On January 3, 2014, Plaintiff again violated Company policy. SF ¶37-41. That morning, Plaintiff unlocked and entered the store alone, contrary to the Company's clear and well-documented Building Security Policy. SF ¶39-40. The policy prohibits managers from unlocking and entering the store without at least one other Associate. SF ¶37-38. This "buddy system" policy, which ensures that no one is ever in the store alone, is designed to protect the Company's property and Associates. SF ¶37-38. Plaintiff testified that he was aware of this policy, and even noted that his prior retail employers enforced the same policy. SF ¶38. Plaintiff also testified that he never violated the policy on any other occasion and he never observed any other manager violate it. SF ¶41, 58.

After Plaintiff entered the store alone that day, Associate Michael Martinez complained to Mr. Schwarz that he had waited outside in the snowy weather with the cleaners for a measurable period of time before Plaintiff came to let them all into the store. SF ¶43. In contrast to Mr. Martinez's story, Plaintiff told Mr. Schwarz earlier that day that he entered the store at the same time as Mr. Martinez and the cleaners. SF ¶42. Mr. Schwarz notified the Loss Prevention Manager, Elizabeth ("Lisa") Ocasio, about the discrepancy in the two stories, which had significant implications for the Building Security Policy, and Ms. Ocasio then checked the store's surveillance video. SF ¶44-45. The video showed that Plaintiff indeed violated policy by entering the store alone, and that he locked the doors behind him, and disappeared from view. SF ¶45. The video also clearly showed that Plaintiff returned several minutes later to open the door for Mr. Martinez and the cleaners. SF ¶45. Ms. Ocasio reported the results of her videotape review to Ms. Sapienza who, in turn, partnered with Ms. Ricard and the Associate Relations Manager, Soledad ("Soley") McCabe, to determine the appropriate action. SF ¶46-47.

On January 9, 2014, Ms. Ocasio interviewed Plaintiff regarding his conduct the morning of January 3, 2014, when he entered the store alone. SF ¶48. Ms. Ocasio asked him who entered the store with him, and Plaintiff responded that he entered the store with the cleaners. SF ¶48. Ms. Ocasio informed Plaintiff that the surveillance video undermined his story. SF ¶48. Still, Plaintiff persisted with his misrepresentation of the events, stating that he remembered entering the store with the cleaners, and he even provided a written statement "doubling down" on his misrepresentation. SF ¶48, 51. He added that, when he entered the store, he went to the office to answer the phone because it was ringing. SF ¶49. Ms. Ocasio and Ms. McCabe noted that Plaintiff would have had to walk past several ringing phones at the front of the store to answer the same line in the office. SF ¶50.

Ms. Ocasio reported her findings to Ms. Sapienza--specifically that Plaintiff entered the store alone and then continued to misrepresent what happened. SF ¶52. As a result of Plaintiff's violation of the security policy, his misrepresentations during the investigation, and his recent discipline, Ms. Ricard and Ms. McCabe recommended that Ms. Sapienza terminate Plaintiff's employment. SF ¶53. Ms. Sapienza testified that she made the decision to terminate Plaintiff's employment because he violated the building security policy and then was not truthful when confronted about it. SF ¶54. After making that decision, Ms. Sapienza notified Mr. Schwarz, who informed Plaintiff on January 20, 2014 that the Company was terminating his employment. SF ¶55. Mr. Schwarz was not involved in the termination decision.    SF ¶56.

The Company has disciplined other managers for entering a store alone in violation of the Building Security Policy, but there is no evidence that any of them lied about their conduct. SF ¶59. Indeed, Ms. Sapienza confirmed that she has no knowledge of any other ASM who, like Plaintiff, entered a store alone and then lied about it. SF ¶60. In contrast, Ms. Sapienza explained that another manager in her district--who is older than Plaintiff--once entered his store with the cleaners (not another Associate) when it was snowing. SF ¶61. Unlike Plaintiff, he immediately called Ms. Sapienza, who told him to leave the store and lock it if no other Associates arrived before the cleaners finished. SF ¶61. In that instance, because he entered with the cleaners, called Ms. Sapienza immediately when he violated Company policy, and sought her advice, Ms. Sapienza did not discipline that employee. SF ¶61.

After Plaintiff's termination, Ms. Sapienza transferred another ASM, Donald Knouse (age 56), to the Norwalk store. SF ¶66. Mr. Schwarz did not participate in the transfer decision. SF ¶68. The three ASMs at the Norwalk store at the time of Plaintiff's termination are 63, 56, and 50 years old. SF ¶62-63. This means that, of the four ASMs who worked at the Norwalk

store soon after Plaintiff's termination, three are in their 50s and one is in his 60s. SF ¶63, 66. None of these ASMs have accused the Company of age discrimination. SF ¶63.

In addition, seventy-six percent (76%) of the Company's ASMs and SMs in Connecticut since 2007 have been over 40 years old. SF ¶64. On the other hand, sixty-six percent (66.6%) of the Associates terminated involuntarily from the Norwalk store during the two years preceding Plaintiff's termination were under 40 years old. SF ¶65. The Company terminated only two employee over the age of 50 in the Norwalk store during that same timeframe. SF ¶65.

In his Amended Complaint, Plaintiff alleges that Mr. Schwarz referred to him as "old school" and a "dinosaur," although he is unclear about when that occurred. SF ¶71. He also claims that a coworker, purportedly at Mr. Schwarz's request, asked Plaintiff when he would retire. SF ¶71. No witnesses have verified these accusations. We know that Mr. Schwarz was not the decision-maker regarding Plaintiff's termination. SF ¶56. Further, Plaintiff admits that no other manager ever made any ageist remarks or engaged in any ageist conduct. SF ¶18, 57, 69. Plaintiff conceded that he knew of the Company's anti-discrimination policy and reporting procedures, and yet he never reported any perceived age-based treatment to management or human resources during his employment, including these alleged stray remarks above. SF ¶9, 69, 70.

## **ARGUMENT**

Summary judgment is proper if the record evidence shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has properly supported its motion for summary judgment with evidence, the non-moving party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). The non-moving party must

produce admissible evidence supporting the existence of all the essential elements on which he bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Welch–Rubin v. Sandals Corp.*, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotations and citations omitted). Where there is no evidence upon which a jury could properly find a verdict for the non-moving party, summary judgment is proper. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010). Applying this standard, the Court should grant T.J. Maxx's motion for summary judgment.

### I.  PLAINTIFF'S AGE DISCRIMINATION CLAIMS FAIL

The ADEA and the CFEPA prohibit employers from discriminating against individuals who are 40 or older. 29 U.S.C. § 623(a); Conn. Gen. Stat. § 46a-60(a)(1). Disparate treatment claims under these statutes involve the same fundamental analysis. *Mendillo v. Prudential Ins. Co.*, 156 F. Supp. 3d 317, 337-336, 344-345 (D. Conn. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). At the *prima facie* stage, the plaintiff must prove that: (1) he was within the protected age group; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Id*. If the plaintiff succeeds, the employer can articulate a legitimate non-discriminatory reason for the adverse employment action, thus nullifying any inference of discrimination. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). The plaintiff then must establish that the employer's legitimate explanation is a pretext, and the real reason for the adverse action was age bias. *Id*. At this final stage, the plaintiff can no longer rely on his *prima facie* case. *Id*; *see also Bispham v. Hartford Hospital*, 2016 U.S.

Dist. LEXIS, 130082, *24 (D. Conn Sept 23, 2016) (Bolden, J.).  Also, the plaintiff cannot defeat summary judgment by mere disagreement with a perceived unfair decision or by questioning the employer's business judgment. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (affirming summary judgment in age discrimination case, noting that a court does "not sit as a super-personnel department that reexamines an entity's business decisions."); *Saliga v. Chemtura Corp.*, 2015 U.S. Dist. LEXIS 133135, *61 (D. Conn. Sept. 30, 2015) (Bolden, J.) ("Whether [Plaintiff] was a good employee and whether Defendant made a bad decision is irrelevant as long as the termination was not made for discriminatory reasons.") (quoting *Gehringer v. St. Joseph's/Candler Health Sys., Inc.*, 2013 U.S. Dist. LEXIS 38863, at *45 (S.D. Ga. Mar. 20, 2013)).

Under the ADEA, the plaintiff's burden of proof on causation is higher than the motivating factor standard that applies in Title VII cases.  *Gross v. FBL Financial Svcs., Inc.*, 557 U.S. 167, 180 (2009).  A plaintiff asserting an ADEA claim must prove that age was the but-for reason for the adverse employment action.  *Id*; *see also Gorzinski*, 596 F.3d at 106.  In other words, it is not enough for a plaintiff to show merely that age played a role in the challenged employer conduct.  He must prove that, if not for his age, he would not have experienced the adverse action.  *Id*; *Bispham*, 2016 U.S. Dist. LEXIS, 130082, at *25.

Despite the *Gross* and *Gorzinski* decisions, whether a but-for or motivating factor causation standard applies to age discrimination claims under CFEPA is unsettled.  *Mendillo*, 156 F. Supp. 3d. at 345.  Even though the Connecticut Supreme Court has long interpreted CFEPA consistent with its federal counterparts, it has not expressly adopted the ADEA's but-for causation standard, and trial courts generally have chosen not to decide one way or the other.  *See id*. (acknowledging uncertainty regarding applicable standard for age discrimination claims

9

under the CFEPA post-*Gross*). Here, although the higher but-for causation standard should apply to age discrimination claims under CFEPA, as it does under the ADEA, Plaintiff's claims fail regardless of the standard. That is because Plaintiff cannot meet his burden of proof on the issue of causation at either the *prima facie* or pretext stages of the analysis.

> **A. Plaintiff Cannot Meet His *Prima Facie* Burden Because The Circumstances Do Not Give Rise To An Inference Of Age Discrimination**
>
> **1. Plaintiff Violated Security Policy And Then Lied About It**

The undisputed record evidence reveals that Plaintiff--a mediocre employee with a history of performance counseling by several managers--violated a clear and well-documented company security policy when he entered the store alone on January 3, 2014. SF ¶15-22, 26-40. The store's security surveillance video confirmed this fact. SF ¶45. Plaintiff testified that he knew "from day one" that he must not enter the store alone because it is a "common" retail security policy to protect company employees and assets--a policy that his three prior employers embraced. SF ¶38. In fact, Plaintiff testified that he had never before--in over 14 years--entered the store alone, which is powerful evidence that he knew it was wrong. SF ¶41.

When Plaintiff's subordinate, Mr. Martinez, complained about Plaintiff's conduct, Ms. Ocasio did her job as the Loss Prevention Manager and reviewed the surveillance footage that showed Plaintiff entering the store alone. SF ¶43-45. A mere six days after the incident, Ms. Ocasio interviewed Plaintiff to determine his explanation. SF ¶48. Instead of admitting his wrongdoing, Plaintiff lied about it, insisting that he entered the store with the cleaners. SF ¶48, 51. Based on Ms. Ocasio's investigation, Ms. Ricard and Ms. McCabe concluded that Plaintiff violated the security policy and lied about it more than once, and he did so soon after receiving three written warnings. SF ¶52-54. Consistent with normal procedure, Ms. Ricard and Ms. McCabe recommended to Ms. Sapienza that she terminate Plaintiff's employment. SF ¶53. Ms.

Sapienza agreed with that recommendation. SF ¶54 (Ms. Sapienza testified that Plaintiff "was terminated for violating a policy and lying about it."). Ms. Sapienza then instructed Mr. Schwarz to notify Plaintiff that she was terminating him. SF ¶55.

Plaintiff does not claim that any of the individuals who participated in the decision to terminate his employment--Ms. Sapienza, Ms. Ricard, or Ms. McCabe--ever made any ageist remarks or jokes. SF ¶57. Nor does he allege that any of these individuals ever engaged in any conduct that evidenced an age bias. SF ¶57. These undisputed facts undermine Plaintiff's claim that his termination occurred under circumstances giving rise to an inference of age discrimination.

### 2. Transfer Of A Co-Worker In The Same Protected Age Group After Plaintiff's Termination Is Not Evidence Of An Age Bias

The fact that a 56-year-old ASM transferred to the Norwalk store after Plaintiff's termination is unremarkable. SF ¶66. At 56, Mr. Knouse is in the protected age group, and the difference in age between him and Plaintiff is hardly strong evidence of age bias. SF ¶66. More importantly, though, there is no evidence that Ms. Sapienza--the individual who made the transfer decision--harbors any age-based animus. In fact, Ms. Sapienza herself is in her mid-50s. SF ¶26. Accordingly, this record does not create an inference of age discrimination, and therefore, Plaintiff cannot establish a *prima facie* case.

### 3. Plaintiff's Transfers Were Not Adverse Employment Actions

Although it is unclear, it appears from Plaintiff's Amended Complaint that he may argue that his transfers within the Norwalk store amounted to adverse employment actions. Am. Compl. ¶9-10. If so, he is wrong. For a transfer to constitute an adverse employment action, it must have a materially detrimental impact on the terms and conditions of the transferee's employment. *Galabya v. New York City Bd. of Ed.*, 202 F.3d 636, 640-642 (2d Cir. 2000); *see*

*also Gaydos v. Sikorsky Aircraft, Inc.*, 2016 U.S. Dist. LEXIS 117155, *30-31 (D. Conn. Aug. 31, 2016) (Bolden, J.). That is not the case here. The undisputed record evidence shows that ASMs routinely transfer between area of the store; transfers between ASM assignments have no impact on compensation, benefits, or advancement prospects; ASMs have similar authority and responsibilities irrespective of their area; and no area of responsibility is more or less prestigious than any other.. SF ¶23-25. Thus, if Plaintiff purports to assert a claim of age discrimination based on his transfer between areas of the store, his claim fails.

### B. Plaintiff Cannot Establish Pretext

#### 1. The Evidence of Plaintiff's Misconduct Is Overwhelming

Even if Plaintiff could establish a *prima facie* case of age discrimination, he cannot establish pretext. As noted above, the Company terminated Plaintiff's employment because he violated security policy and then lied about it on the heels of receiving three well-deserved written warnings. SF ¶37-51. The Company has supported this legitimate, non-discriminatory explanation with credible evidence, which Plaintiff cannot rebut. SF ¶37-54.

#### 2. There Is No Evidence Of Disparate Treatment

In addition to the overwhelming evidence of Plaintiff's misconduct, the surrounding evidence belies any notion of an age bias or a causal nexus between Plaintiff's age and the decision to terminate his employment. Perhaps most notably, the record is devoid of evidence that the Company treated any similarly situated employees (outside of Plaintiff's protected age group) better. *See Moody v. Aircastle Advisor*, LLC, 2016 U.S. Dist. LEXIS 42087, *33-40 (D. Conn. March 30, 2016 (Bolden, J.) (granting summary judgment, in part, given the absence of evidence of disparate treatment). To the contrary, the record reflects that the Company has disciplined other employees who violated the building security policy, *see* SF ¶59, although there

is no evidence that anyone lied about it. *Mendillo*, 156 F. Supp. 3d at 340 (granting summary judgment to employer on age discrimination claim where the record evidence did "not demonstrate that younger employees were treated more favorably than older ones."). The record also reflects that when a manager *older* than Plaintiff entered a store during a snow storm, Ms. Sapienza did not discipline him because he (a) entered the store with the cleaners (unlike Plaintiff), (b) immediately called Ms. Sapienza (unlike Plaintiff), and (c) did not lie (unlike Plaintiff). SF ¶61.

While Plaintiff claims that he is aware of other managers violating the building security policy, he has proffered no evidence other than his own self-serving testimony. SF ¶58. Plaintiff admitted that he never saw any manager actually enter a store alone, and therefore, he has no independent knowledge or evidence to support such a claim. SF ¶58. Plaintiff's testimony reveals only that he assumed managers entered the store alone because, on occasion, he showed up at the store and observed a manager in the office alone. SF ¶58. Even assuming that Plaintiff's unsupported allegation is true, and other managers entered the store alone in violation of the building security policy, there is no evidence that Ms. Sapienza knew about it and nevertheless chose not to fire them. The opposite is true. Ms. Sapienza testified that she is not aware of any other managers violating the building security policy. SF ¶60-61. Finally, even if other managers entered the store alone and Ms. Sapienza knew it but did not fire them, that would not prohibit summary judgment. That is because the Company terminated Plaintiff's employment because he violated the building security policy *and* then repeatedly lied about it. SF ¶37-54. *See Moody*, 2016 U.S. Dist. LEXIS 42087, *33-40 (D. Conn. March 30, 2016 (Bolden, J.) (noting the need for comparators to be "similarly situated in all material respects").

13

There is no evidence that any manager engaged in comparable multi-layered misconduct, much less that any manager did so soon after receiving three written warnings.

### 3. Further Record Evidence Belies The Notion Of A Causal Nexus Between Plaintiff's Age And His Termination

Although summary judgment is proper without it, the record contains additional evidence that undermines Plaintiff's age discrimination claims. For instance:

- the Company's policies prohibit age discrimination and dishonesty (SF ¶4-10);

- the Company hired Plaintiff when he was nearly 50 years old (SF ¶3);

- Plaintiff's peer ASMs at the Norwalk store are also members of the protected age group, including one ASM in his 60s (SF ¶62-63);

- those ASMs remain employed with the Company and they have never accused management of age discrimination (SF ¶62-63);

- seventy-six percent of the ASMs and SMs that the Company has employed in Connecticut since 2007 have been over the age of 40 (SF ¶64);

- over sixty-six percent of the Associates terminated involuntarily from the Norwalk store during the two years preceding Plaintiff's termination were under the age of 40 (SF ¶65); and

- only two Associates terminated involuntarily from the Norwalk store during the two years preceding Plaintiff's termination were over the age of 50 (SF ¶65).

This evidence does not expose an employer with an age bias.

### 4. The Only Manager With An Alleged Age Bias Did Not Participate In The Termination Decision

Plaintiff's only alleged evidence that his age played a role in the decision to terminate his employment is his unsupported claim that Mr. Schwarz made a few ageist comments. Am.

Compl., ¶11.  He claims that Mr. Schwarz referred to him as "old school" and like a "dinosaur," and inquired when he intended to retire.  SF ¶71.  If this actually occurred, Plaintiff admittedly never reported it to management or human resources personnel until after his termination, despite knowing how to do so.  SF ¶69-70.  Beyond Plaintiff's assertion, there is no objective evidence to support his allegation.  There are no documents and there is no testimony in the record supporting the notion that Mr. Schwarz made these alleged comments or that he harbors an age bias.

More importantly, though, Plaintiff's claim that Mr. Schwarz made a few age-related comments is an irrelevant distraction.  As this Court has noted, ageist "comments only constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Chapman v. Sikorsky Aircraft Corp.*, 2015 U.S. Dist. LEXIS 162097, *15 (D. Conn. Dec. 3, 2015) (Bolden, J).  Here, the undisputed record reflects that Mr. Schwarz did not make or participate in the decision to terminate Plaintiff's employment.  SF ¶56.  Individuals untainted by any alleged age bias made the termination decision based on Plaintiff's misconduct.  SF ¶53-54, 57.  Mr. Schwarz's alleged and unsubstantiated age bias cannot be imputed to the actual decision makers.[2]

---

[2] If Plaintiff's age discrimination claim hinges on the so-called "cat's paw" theory of liability, it fails.  The "cat's paw" theory of liability "refers to a situation in which an employee is fired . . . by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a move." *Vasquez v. Empress Ambulance Services, Inc.*, 835 F.3d 267, 272 (2d Cir. 2016).  This Court said recently:  "For a cat's paw scenario, a non-decisionmaker with a discriminatory motive dupes an innocent decisionmaker into taking action against the plaintiff.  *Delgado v. City of Samford*, 2015 U.S. Dist. LEXIS,* 14038, *56 (D. Conn. Nov. 2. 2015) (Bolden, J.).  The record does not support a conclusion that Mr. Schwarz manipulated or duped Ms. Sapienza, Ms. Ricard, or Ms. McCabe.  Also,  the Second Circuit has not expressly adopted the cat's paw theory to support ADEA or CFEPA claims.  *Vasquez,* 835 F.3d  at 272-273.

Given these facts, Plaintiff cannot prove that his age was a motivating factor in the termination decision, and he certainly cannot prove that his age was the but for reason for his termination.

## II. PLAINTIFF'S RETALIATION CLAIMS FAIL

The ADEA and the CFEPA prohibit employers from taking adverse employment action against individuals for opposing alleged discriminatory conduct. 29 U.S.C. § 623(d); Conn. Gen. Stat. § 46a-60(a)(4). To establish a *prima facie* case of retaliation under either statute, the plaintiff must prove that: (1) he engaged in protected activity; (2) the employer knew of the protected activity; (3) he suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *Mendillo*, 156 F. Supp. 3d at 340, 345; *Delgado v. City of Stamford*, 2015 U.S. Dist. LEXIS 148038, 65-66 (D. Conn. Nov. 2, 2015) (Bolden, J). If the plaintiff establishes a *prima facie* case, the employer can articulate a legitimate, non-retaliatory reason for the adverse action. *Mendillo*, 156 F. Supp. 3d at 341. Then the Plaintiff must prove that the employer's stated reason was a pretext, and the plaintiff's protected activity was the real reason for the adverse employment action. *Id*.

In light of the plain language of the ADEA's and the CFEPA's retaliation provisions, the decisions in *Gross* and *Gorzynski*, and the Connecticut Supreme Court's reliance on federal precedent when interpreting the CFEPA, a plaintiff asserting retaliation under either statute must establish but-for causation. *Gross*, 557 U.S. at 176-180; *Univ. of Texas v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *Gorzynski*, 596 F.3d at 111; *Fried v. LVI Servs.*, 500 Fed. Appx. 39, 41-42 (2d Cir. 2012) (Unpub.); *but see Wagner v. Bd. of Trs. for Conn. State Univ.*, 2012 Conn. Super. LEXIS 316, *33-39 (Jan. 30, 2012) (declining to apply ADEA but-for causation standard to the

CFEPA and instead applying a motivating factor standard). Here again, regardless of the standard, Plaintiff cannot prove retaliation at the *prima facie* or pretext stages of the analysis.

### A. Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliation

#### 1. Plaintiff Admitted He Did Not Engage In Protected Activity

Plaintiff's retaliation claim fails at the outset because he did not engage in protected activity. "The term protected activity reference to action taken to protest or oppose statutorily prohibited discrimination." *Delgado*, 2015 U.S. Dist. LEXIS 148038 at *67 (internal quotations and citations omitted). The Second Circuit has recognized "informal protests of discriminatory employment practices" to management as protected activity. *Id.* at *68. But "such informal complaints must be sufficiently specific to make clear that the employee is complaining about conduct prohibited" by the anti-discriminatory statute. *Id*. "Generalized complaints about a supervisor's treatment are insufficient." *Id.* Applying this standard to the record evidence, Plaintiff cannot establish that he engaged in protected activity.

Quite simply, Plaintiff admitted that he never complained about discrimination on the basis of his age prior to his termination. SF ¶69 ("I did not make any complaints during the time I was there."). He knew how to report discrimination to the Company, but he never did so. SF ¶9, 69. At most, Plaintiff asserts that he complained generally about "unfair treatment," but he admittedly never connected the so-called unfair treatment to his age. *Id*. *See Mendillo*, 156 F. Supp. 3d at 341 (granting summary judgment where the plaintiff made internal complaints about unfair treatment, but there was no evidence that any of the complaints alleged discrimination based upon age). Because Plaintiff did not engage in protected activity, his retaliation claims fail from the start.

> **2.      Plaintiff Cannot Establish A Causal Nexus Given The Decision-Makers' Lack Of Knowledge Of Any Alleged Protected Activity And The Legitimacy Of The Termination**

Plaintiff's *prima facie* case fails for two more reasons. Plaintiff cannot prove that the individuals who participated in the decision to terminate his employment--Ms. Sapienza, Ms. Ricard, and Ms. McCabe--knew about his alleged protected activity. SF ¶69. Each of them testified that they had no knowledge of any internal complaints of discrimination by Plaintiff, and certainly not before his termination. *Id*. Absent knowledge of protected activity, there can be no retaliatory animus or a causal nexus. *Gordon v. Marquis*, 2007 U.S. Dist. LEXIS 27811, *35 (D. Conn. March 31, 2007) (granting summary judgment, noting "[a] causal connection cannot exist if the person allegedly responsible for the adverse action had no knowledge of the protected activity.") (internal citations and quotations omitted). Also, even assuming that the decision-makers knew of some alleged protected activity, such knowledge is not sufficient to establish a causal nexus. *See Bispham*, 2016 U.S. Dist. LEXIS, 130082, at *31 (noting mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action generally insufficient to establish a prima facie case of retaliation). Plaintiff's termination occurred right after he was caught violating the building security policy and lying about it during Ms. Ocasio's independent investigation. Plaintiff therefore cannot establish a *prima facie* case of retaliation.

> **B.      Plaintiff Cannot Establish Pretext Given The Absence Of Disparate Treatment And Record Of Fair Treatment**

Finally, even if Plaintiff has met his *prima face* burden on his retaliation claims, these claims would still fail because Plaintiff cannot show that the Company's legitimate explanation for his termination was pretextual. Plaintiff cannot identify a single manager who violated the building security policy, lied about it, and nevertheless evaded termination. On the other hand,

the record reflects that managers have been disciplined for violating the building security policy (SF ¶59); and Ms. Sapienza displayed lenience under somewhat analogous circumstance toward a manager who is not only older than Plaintiff, but who did not engage in protected activity.  SF ¶61.  Thus, Plaintiff cannot prove his retaliation claims.

## CONCLUSION

For all of the above reasons, Defendant respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint, in its entirety, with prejudice.

Respectfully submitted,

THE TJX COMPANIES, INC.

By its attorneys,

*/s/ Anthony S. Califano*
Lynn A. Kappelman (ct03480)
Anthony S. Califano (ct27323)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, Massachusetts  02210
Telephone:  (617) 946-4800
Fax:  (617) 946-4801
lkappelman@seyfarth.com
acalifano@seyfarth.com

Dated: February 13, 2017

---

CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2017, this document was filed electronically through the Court's ECF system.  Notice of this filing will be sent by e-mail to all parties or their counsel by operation of the Court's electronic filing system or by mail to any party unable to accept electronic filing as indicated on the Court's Notice of Electronic Filing.

*Anthony S. Califano*
Anthony S. Califano

19